UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
(FORT LAUDERDALE DIVISION)
www.flsb.uscourts.gov

In re:                                                    Case No. 15-12588-BKC-RBR

DAVID CASSIDY,                                            Chapter 11

      Debtor.
_____/

## DEBTOR'S MOTION FOR THE ENTRY OF ORDER (1) AUTHORIZING DEBTOR TO SCHEDULE AN AUCTION SALE OF REAL PROPERTY JOINTLY OWNED BY DEBTOR AND NONFILING SPOUSE; (2) APPROVING BIDDING PROCEDURES IN CONNECTION WITH AUCTION SALE; (3) APPROVING FORM AND MANNER OF THE SALE; (4) SCHEDULING A FINAL HEARING TO APPROVE SALE; AND (5) APPROVING THE SALE OF THE REAL PROPERTY FREE AND CLEAR OF INTERESTS, LIENS, CLAIMS, AND ENCUMBRANCES

David Cassidy (the "Debtor"),  through undersigned counsel, hereby files this Motion for the entry of an Order: (1) authorizing the Debtor to schedule an auction sale of real property jointly owned by the Debtor and his nonfiling spouse, as tenants by the entirety; (2) approving bidding procedures in connection with the auction sale; (3) approving the form and manner of the notice of sale; (4) scheduling a final hearing to approve the sale; and (5) approving the sale of the Debtor's interest in the real property free and clear of liens (the "Motion"). In support thereof, the Debtor respectfully states as follows:

### JURISDICTION AND VENUE

The Court has jurisdiction to consider this Motion and to grant the relief requested herein pursuant to 28 U.S.C. §157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for this Motion are Sections 105, 363 and 522(f) of Title 11, united States Code (the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

1.  On February 11, 2015, (the "Petition Date") the Debtor filed a voluntary petition under Chapter 11, Title 11 of the United States Code.

2.  The Debtor and Ms. Susan Cassidy, the Debtor's non filing spouse ("Mrs. Cassidy"), jointly own certain real property located at 1600 S. Ocean Dr. #2003, Fort Lauderdale, Fl. 33316 , Florida which is legally described as: Harbor Beach Unit 2-21-18B Lot 5 BLK 9 (the "Marital Residence"). The Marital Residence is a beautiful seven thousand (7,000) square foot family residence located on the water in the Harbor Beach neighborhood of Fort Lauderdale, Florida.

3.  The Debtor's ownership interest in the Marital Residence is held as tenants by the entirety with his spouse Susan Cassidy. The Marital Residence is the Debtor's exempt homestead pursuant to Article X, Section 4 of the Florida Constitution. See Schedules "A, C" (D.E. No. 1).

4.  The Marital Residence is encumbered by: (1) a Note and first mortgage lien in the approximate amount of $803,728.000; and (2) an equity line of credit secured by a second mortgage lien in the approximate amount of $855,178.00. The Debtor is unaware of any other liens or encumbrances on title.

5.  The Broward County Property Appraiser has valued the Marital Residence at $3,431,263.00. A true and correct copy of this statement is attached hereto as "Exhibit "A.

6.  Mrs. Cassidy has filed an action to dissolve her marriage to Mr. Cassidy in Broward county Florida. However, Ms. Cassidy presently resides in the state of California.

7.  Mr. Cassidy's profession requires him to spend a significant amount of time traveling. Accordingly, Cassidys no longer require such a large residence.

8.      Mr. and Ms. Cassidy engaged a realtor pre petition and placed the Marital Residence on the market. However, they were not been able to consummate a sale of the Marital Residence under the circumstances set forth herein.

9.      The sale of the Marital Residence will provide funds to satisfy two notes and the mortgages securing same. In addition, the proceeds could satisfy their  joint marital debt. The sale of the Marital Residence should improve the liquidity of both of the Cassidys and thereby facilitate the division of marital assets and debt.  Both Mr. and Ms. Cassidy have agreed that an auction will expedite the sale of the residence. Accordingly, by this Motion, the Debtor requests that the Court approve an auction and sale process as set forth herein.

10.     Undersigned counsel certifies that she has conferred with counsel for Ms. Cassidy who agrees to the relief requested in this Motion and the terms described below.

11.     By separate application filed contemporaneous with this Motion, the Debtor is also seeking authority to hire Fisher Auction Company to assist in the marketing and sale of the Marital Residence.

## RELIEF REQUESTED

**A.   Approval of Bidding Procedures**

12.     In order to ensure that the Debtor's estate is able to derive the maximum value from the sale of the Marital Residence, the Debtor proposes to sell the Marital Residence to the highest and best bidder at a public auction to be conducted by the Auctioneer.  The Debtor seeks to adopt procedures which will foster competitive bidding among potential buyers, without eliminating or discouraging any qualifying bids.  In connection therewith, the Debtor  requests that the Court approve the following bidding and sale procedures, which the Debtor believes will maximize the value of the Marital Residence (the "Bidding Procedures").

{24422942;3}

Participation Requirements: Unless otherwise ordered by the Court, in order to participate in the bidding process, an interested bidder must (I) wire into the trust account of Susan D. Lasky, PA, an escrow deposit of $200,000 no later than 5:00 p.m. two (2) business days prior to the scheduled auction (the "Bid Deadline") and (ii) submit to Susan D. Lasky PA a fully executed bid proposal, which shall include a purchase price, on or before the Bid Deadline  A person who timely complies with these requirements shall be a "Qualified Bidder". The "Successful Bidder" (defined below) shall be required to tender on the auction day an additional deposit in the form of a personal or business check drawn on a U.S. Bank bringing the total deposit to an amount equal to 10% of the total contract price including the Buyer's Premium.

Marketing Plan: The Trustee, by separate application filed contemporaneously herewith, is seeking to retain the services of Fisher Auction Co., Inc. (the "Auctioneer") to implement an extensive Accelerated Marketing Plan to advertise the sale of the Marital Residence and to conduct the auction sale thereof (the "Marketing Plan"). A copy of the Marketing Plan, which outlines the Auctioneer's proposed marketing activities, is attached hereto as **Exhibit "B."**

Participation in Auction: Provided that a Qualified Bid or Qualified Bids are submitted on a timely basis, the Debtor, by and through the Auctioneer, will conduct an auction (the "Auction").  The Auction shall take place at the Marital Property , which is located at 1600 S. Ocean Dr, Fort Lauderdale Florida 33316, prior to the requested hearing date on the proposed sale, beginning at 10:00 a.m. or such other time or place as the Debtor shall notify all Qualified Bidders.

Auction Procedures: All Qualified Bidders shall be entitled to make any bids, provided however, that after the initial bid is accepted all subsequent bids shall be in increments of $25,000 or as otherwise modified by the Debtor. Bidding at the Auction shall continue until such time as the highest and best offer is determined, which shall be determined by the Debtor in the exercise of his business judgment. The Debtor reserves the right to modify the bidding increments or announce at the Auction additional procedural rules for conducting the Auction in the exercise of his business judgment.

Real Estate Sales Contract: The Successful Bidder shall be required to execute a "Non-Contingency- All Cash" Real Estate Sales Contract on the Auction Day with no post due diligence period.

Successful Bid: After the conclusion of the Auction, the Debtor shall submit the highest or best bid (the "Successful Bid") for approval by the Bankruptcy Court (the "Sale Hearing"). The Qualified Bidder who has the Successful Bid presented for approval to the Court shall be referred to herein as the "Successful Bidder." Closing shall take place within thirty (30) days of entry of the Sale Order or 5 days after the Sale Order becomes final and non-appealable, whichever is later. Upon the failure of the Successful Bidder to consummate the closing of the purchase of the Marital Residence  because of a breach or failure on the part of the Successful Bidder, then the Debtor may elect in his business judgment the next highest or otherwise best Qualified Bidder to be the Successful Bidder (the "Back Up Bidder"). At the Sale Hearing, the

Debtor intends to seek approval from the Court for the next highest or best bid (the "Back Up Bid"), which approval shall authorize the Debtor to consummate the Back Up Bid immediately after a default under the Successful Bid without further order of the Court. Promptly following the conclusion of the Sale Hearing, Debtor's counsel shall return the deposits to each unsuccessful Qualified Bidder (except the Back Up Bidder whose deposit shall either be returned upon the closing of the sale to the Successful Bidder or applied to the purchase price in a closing with such Back Up Bidder). The ultimate purchaser, upon closing, whether the Successful Bidder or the Back Up Bidder, shall be referred to herein as the "Purchaser".

As Is Where Is: The Marital Residence will be sold in its "As Is", "Where Is" condition and with all faults, with no guarantees or warranties express or implied.

Real Estate Commissions: The Auctioneer shall be entitled to a commission as outlined in the Proposal attached hereto as Exhibit "B." The Debtor shall not be responsible for any other real estate commissions. The Purchaser shall indemnify and hold the estate harmless for any other claimed real estate commissions.

Liquidated Damages: In the event the Successful Bidder does not close, the Successful Bidder will forfeit the 10% deposit.

Objections: Objections, if any, to the Sale, must (a) be in writing; (b) set forth the nature of the objector's claims against or interest in the Debtor's estate, and the basis for the objection and the specific grounds therefore; (c) comply with the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of Florida and all Orders of this Court; (d) be filed with the Court and served upon counsel to the Debtor, the United States Debtor for the Southern District of Florida, so as to be RECEIVED no later than 5:00 pm (Eastern) two (2) days prior to the Sale Hearing (the "Objection Deadline"). Only timely filed and served responses, objections, or other pleadings will be considered by this Court at the Sale Hearing. The failure of any person or entity to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, the Sale or the consummation and performance of the Agreement.

**Form and Manner of Notice of Bidding Procedures and Sale**

13.     Pursuant to Bankruptcy Rule 2002(a), the Debtor is required to provide creditors with 20 days Notice of the Sale Hearing. Pursuant to Bankruptcy Rule 2002(c), such notice must include the date, time and place of the Auction and the Sale Hearing, and the deadline for filing any objections to the relief requested.

14.     The Debtor has served or will serve this Motion on all creditors and the Office of the United States Trustee. In addition, the Debtor proposes to serve upon all creditors and parties who have expressed an interest in acquiring the Marital Residence the Notice of Sale and Bidding

Procedures (the `Notice") substantially in the form attached hereto as **Exhibit "C".** The Notice will include, among other things, the proposed Bidding Procedures, the deadline for mailing objections and competing bids, the location of the Auction (if necessary) and the date and time of the Sale Hearing.  Moreover, the Auctioneer will aggressively market the Marital Residence pursuant to the Marketing Plan.

**C.     Sale of Marital Residence Free and Clear of Interests, Liens, Claims and Encumbrances**

15 .   The Debtor seeks to sell the Marital Property to the highest and best bidder following the Auction, free and clear of interests, liens, claims, and encumbrances with same attaching to the proceeds of the sale pursuant to the following agreed upon terms:

(a)      Any claim or lien for the marketing expenses advanced by the Debtor or Ms. Cassidy,  not to exceed $13,802.55 incurred by Fisher Auctions,  shall attach to the Gross Sale Proceeds received by the Debtor for the sale of the Marital Residence shall be reimbursed and paid at closing;

(b)      the First and Second Mortgages  of Wells Fargo  shall attach to the Gross Sale Proceeds received by the Debtor from the sale of the Marital Residence and shall be paid and satisfied at the closing;

(c)      all pre-closing unpaid real estate tax shall be paid and satisfied at the closing;

(d)    By agreement between Ms. Cassidy and the Debtor, the interest of Ms. Cassidy and the Debtor in the remaining proceeds from the sale of the Marital Residence  shall attach to the Net Sale Proceeds from the sale of Marital Residence (the "Net Sale Proceeds")[1] after payment of the first and second mortgages held by Wells Fargo , marketing expenses and real estate taxes, and shall be paid to the appropriate party on court order or as agreed and approved by Court Order, after Notice and hearing thereon.

---
[1]      Net Sale Proceeds shall mean the purchase price actually paid by the successful bidder minus all expenses related to the sale of the Marital Residence, including: (I) transfer taxes; (ii) ad valorem taxes; (iii) recording fees; (iv) marketing expenses; (v) expenses associated with the auction; and (vi) amount paid to satisfy the Mortgages.

{24422942;3}

16.     Section 363(f) of the Bankruptcy Code authorizes the Debtor to sell property of the estate free and clear of any liens, claims or encumbrances if one of the following is met: (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents, (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property, (4) such interest is in bona fide dispute or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. The language of Section 363(f) is in the disjunctive, so that a sale free and clear of interests can be approved if any of the aforementioned conditions is met. *In re Heine,* 141 B.R. 185, 189 (Bankr. D.S.D. 1992); *In re Elliot,* 94 B.R. 343, 345 (E.D. Pa. 1988).

17.     Here, the Debtor asserts that Section 363(f)(3) authorizes the sale of the Marital Residence  free and clear of all interests, liens, claims, and encumbrances as the market value of the Marital Residence exceeds the value of all liens.

18.     The Debtor will have provided notice of the sale and Bid Procedures to all creditors and interested parties and Fisher will have extensively marketed the Marital Residence in accordance with the Marketing Plan. The Debtor submits that, as a result of the Auction, the sale will be for a fair and reasonable market price and, of course, conducted in good faith.

19.     The Debtor asserts that the marketing expenses related to Fisher's Marketing Plan in the approximate amount of $13,802.55 will be advanced by the Cassidys prior to Fisher's engagement of the Marketing Plan.

20.     Collectively, these factors clearly evidence that the Debtor's  proposed sale of the Marital Residence to the highest and best bidder at auction, without any further delay, is in the best interest of all creditors of the estate.

**D.     Scheduling Final Hearing on Sale Motion**

21.    The Debtor requests that the Court set a final hearing on the Sale Motion approximately 60 days following the initial hearing on this Motion to allow the Auctioneer to implement its marketing plan.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order (1) authorizing the Debtor to schedule an auction sale of the Marital Residence, (2) approving bidding procedures in connection with auction sale, (3) approving form and manner of notice of sale, (4) scheduling a final hearing to approve sale, (5) approving the sale of the Debtor's real property free and clear of interests, liens, claims and encumbrances with same attaching to the proceeds of sale as detailed in the Motion, and (6) granting such other and further relief as is proper.

I HEREBY CERTIFY that a copy of the above and foregoing has been served on the list attached hereto on this 21st day of May, 2015, and that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A). Respectfully submitted,

SUSAN D. LASKY, PA
Attorneys for Debtor
915 Middle River Dr Suite 420
Ft Lauderdale, Fl 33304
954-400-7474 954-206-0628 fax
Sue@SueLasky.com

BY:_____*Susan Lasky*_____
        SUSAN D. LASKY, ESQ.
        Florida Bar No.: 451096

# EXHIBIT
# "A"



| Site Address | 1600 S OCEAN DRIVE, FORT LAUDERDALE | ID # | 5042 13 03 0620 |
|---|---|---|---|
| Property Owner | CASSIDY,DAVID & SUSAN SLC REV FAM TR | Millage | 0312 |
| Mailing Address | 1600 S OCEAN DRIVE FORT LAUDERDALE FL 33316-3244 | Use | 01 |

| Abbreviated Legal Description | HARBOR BEACH UNIT 2 21-18 B LOT 5 BLK 9 |
|---|---|

**The just values displayed below were set in compliance with Sec. 193.011, Fla. Stat., and include a reduction for costs of sale and other adjustments required by Sec. 193.011(8).**

| Property Assessment Values | | | | | |
|---|---|---|---|---|---|
| Click here to see 2014 Exemptions and Taxable Values as reflected on the Nov. 1, 2014 tax bill. | | | | | |
| Year | Land | Building | Just / Market Value | Assessed / SOH Value | Tax |
| 2015 | $863,240 | $1,104,840 | $1,968,080 | $1,759,540 | |
| 2014 | $863,240 | $1,104,840 | $1,968,080 | $1,745,580 | $34,283.36 |
| 2013 | $844,050 | $1,015,390 | $1,859,440 | $1,719,790 | $34,172.50 |

**IMPORTANT: The 2015 values currently shown are "roll over" values from 2014. These numbers will change frequently online as we make various adjustments until they are finalized on June 1. Please check back here AFTER June 1, 2015, to see the actual proposed 2015 assessments and portability values.**

| 2015 Exemptions and Taxable Values by Taxing Authority | | | | |
|---|---|---|---|---|
| | County | School Board | Municipal | Independent |
| Just Value | $1,968,080 | $1,968,080 | $1,968,080 | $1,968,080 |
| Portability | 0 | 0 | 0 | 0 |
| Assessed/SOH 03 | $1,759,540 | $1,759,540 | $1,759,540 | $1,759,540 |
| Homestead 100% | $25,000 | $25,000 | $25,000 | $25,000 |
| Add. Homestead | $25,000 | 0 | $25,000 | $25,000 |
| Wid/Vet/Dis | 0 | 0 | 0 | 0 |
| Senior | 0 | 0 | 0 | 0 |
| Exempt Type | 0 | 0 | 0 | 0 |
| Taxable | $1,709,540 | $1,734,540 | $1,709,540 | $1,709,540 |

| Sales History | | | | | Land Calculations | | |
|---|---|---|---|---|---|---|---|
| Date | Type | Price | Book/Page or CIN | | Price | Factor | Type |
| 1/27/2005 | QCD | | 39015 / 1351 | | $45.00 | 19,183 | SF |
| 2/12/2001 | WD | $1,100,000 | 31287 / 133 | | | | |
| 9/1/1993 | WD | $715,000 | 21150 / 594 | | | | |
| 7/1/1991 | WD | $875,000 | | | Adj. Bldg. S.F. (Card, Sketch) | | 7075 |
| 10/1/1986 | WD | $392,500 | | | Units | | 1 |

| Special Assessments | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Fire | Garb | Light | Drain | Impr | Safe | Storm | Clean | Misc |

| 03 | | | | | | | | |
|----|--|--|--|--|--|--|--|--|
| R | | | | | | | | |
| 1 | | | | | | | | |

# EXHIBIT
# "B"

# Auction Marketing Plan
# "The David Cassidy Bankruptcy Estate"

**Introduction**

For over forty years, Fisher Auction Company ("Fisher") has been selling real property for numerous Governmental Agencies (U.S. Bankruptcy Court, State Court Receiverships, F.D.I.C., R.T.C.), Major Corporations, Financial Institutions, States, Counties and Municipalities, Local / Regional / National / International Real Estate Brokerage Firms and Private Sellers across North America, the Commonwealth of Puerto Rico and the U.S. Virgin Islands with total sales in excess of 2.5 billion dollars. Fisher is consistently ranked in the top ten of National/International Real Estate Auction Marketing Firms. Fisher produces qualified cash bidders and ultimately successful purchasers throughout the United States and abroad.



Fisher is the premier Real Estate Auction Marketing Firm of choice, with vast experience in the U.S. Bankruptcy Court arena especially within the State of Florida. Fisher knows the Florida market and its track record speaks for itself. *One of Fisher's highly successful U.S. Bankruptcy Court initiatives (Casa Casuarina, LLC case) was the former "Versace Mansion", located on famous South Beach, Miami Beach, Florida closing at $41,500,000 (166% of the Stalking Horse Bid). This initiative alone produced an extensive worldwide buyer database.*

Fisher continues to lead its industry by formulating new techniques in "Accelerated Marketing", which in turn outperforms any competition and maximizes the value/return for its client's real estate assets.

**Scope of Services**

Fisher proposes to conduct a live open-outcry U.S. Bankruptcy Court Auction ("Auction") on the Cassidy's exquisite waterfront "Harbor Beach" estate home ("Property") located at 1600 South Ocean Drive, Fort Lauderdale, Florida.

The Auction and the sale of the Property will be accomplished via a U.S. Bankruptcy Court Ordered 363 Sale ("Court"). The terms of the offering will be predefined in the Court approved Bidding Procedures/General Terms and Conditions of Sale. All pre-qualified bidders will competitively bid based upon the bidding procedures at the preset Auction date and time.

Fisher's specifically designed approved marketing plan for the Property will deliver a distinct message to all pre-qualified bidders that the Court is highly motivated and desires to sell the Property now in order to generate maximum level of interest and obtain the highest net sales price for the Cassidy's, the secured and any unsecured creditors in this Bankruptcy Estate.

**Auction/Sale Timeline**

Upon Fisher's approval of retention by the Court, the Auction will take place within sixty calendar days which allows for sufficient time to prepare the necessary due diligence/marketing packages for distribution to all the prospective bidders and implement our specifically designed approved marketing campaign for the Property. The Auction day/date/time will be mutually agreed upon by all parties involved.

If all possible, we recommend the Court's confirmation hearing of the sale be scheduled the day following the Auction.



# Auction Marketing Plan
# "The David Cassidy Bankruptcy Estate"

**Auction/Sale Location**

We recommend the Auction be conducted onsite at the Property in order to take advantage of the Property's prestige location. Onsite auctions generate more dollars when bidders are viewing what they are purchasing. Fort Lauderdale police security, valet parking (if necessary) and a court reporter will be provided at the Auction. The Auction will also be videoed for record purposes.

**Property Tours**

Beginning six weeks prior to the scheduled Auction, Fisher's team of professionals will provide multiple property tour dates/times for the prospective bidders to view the Property and conduct their own due diligence. Our team will also accommodate prospective bidders via special appointment, if necessary. All property tours will be coordinated with Mr. Cassidy if he is still occupying the home.

In addition, special broker opens will be conducted in order to encourage the brokerage community to register their clients for participation at the Auction.

**Marketing Strategy**



The Property will be marketed via international, national, regional and local venues in order to give the broadest range of coverage and attract the maximum number of pre-qualified bidders. Fisher's marketing campaigns reach worldwide and continue to produce buyers across the United States and from multiple foreign countries.

Fisher's specific marketing strategy will be to market the Property to our international / national / regional / local buyer databases, end users, all previous interested parties,  immediate area property owners, foreign and U.S. investors, multi-million dollar net worth  individuals, business professionals, international/national/regional/local high end residential brokerage firms, etc. The marketing campaign will stress the Court's urgency for buyers to act now knowing that they will not have any other opportunity to purchase the Property.

We will emphasize to all pre-qualified bidders that the Property will be purchased free and clear of all liens and monetary encumbrances. Again, this is accomplished through the U.S. Bankruptcy Court Ordered 363 Sale process.



**Specific Marketing Highlights**

The Auction will be presented and positioned as; **"U.S. Bankruptcy Court Auction."**

The marketing highlights will include;

▪ <u>Direct Mail</u> A direct mail piece will be designed and mailed to all logical, identifiable buying individuals for the Property. Fisher has extensive buyer databases, especially in the luxury residential marketplace, for utilization in the direct mail campaign.



# Auction Marketing Plan
# "The David Cassidy Bankruptcy Estate"

■ **Print Medias/Specialty Journals**

The national, regional and local print media campaign will be geared to a six week program. Sample Medias will include;

- The Wall Street Journal
- The New York Times
- The Sun Sentinel
- USA Today

We continuously monitor all prospective bidder response from each media advertisement allowing daily analysis. All responses from prospective bidders are logged by date and source into our advertising response computer software system providing reporting and analytics at anytime to the Court, the Cassidy's and legal counsel.

■ **Telemarketing**

After our market segmentation, we will utilize all data to develop a plan for our team of personnel to contact potential purchasers, introduce them to the auction sales process and provide the due diligence marketing package including bidder pre-qualification instructions.

Each bidder inquiry will be handled on a real time basis for the dissemination of the promotional materials and due diligence package. We believe it is of critical importance to recognize that typical prospective purchaser questions and are answered and dealt with differently in a real estate auction marketing offering, especially in the U.S. Bankruptcy Court arena.

■ **E-Platforms**

The Auction will be prominently featured on Fisher's web-site. Our firm receives thousands of hits from potential buyers for luxury residences on a daily basis. We will also advertise/list on all appropriate-targeted e-platform sites including but not limited to;

- auctionzip.com
- mls / realtor.com
- bigboysblast.com
- propertycampaign.com
- fastemailflyers.com
- USAwaterviews.com
- loopnet.com
- landsofflorida.com
- propertyblasthomes.com
- naarealestateauctions.com
- propertyauction.com
- Additional Marketing Tools include all social medias (Facebook, Twitter, Linkedin), property signage and personal solicitations



**Public Relations Campaign**

A valuable aspect of a major auction marketing plan is the public relations campaign. Properly conceived plans often result in the generation of free publicity at the level ten times the direct media placement budget. Utilizing our public relations firm to plan and coordinate national, regional and local focus, we are extremely confident we will effectuate results on behalf of the auction effort.



# Auction Marketing Plan
# "The David Cassidy Bankruptcy Estate"

**Auction Methodology/Stalking Horse Bidder**

There are two types of auction methodologies for consideration;

1) The Property will be offered to the highest and best bidder at or above an aggressive minimum bid price.

2) The Property is sold to the highest and best bidder and the final bid price is subject to the approval by the Court.

Once the purchase agreement is secured at the Auction, it will be presented to the Court for its final approval via an approved sale order.

During the marketing campaign, Fisher's team will attempt to secure a Stalking Horse bid. If Fisher is successful in securing an approved Stalking Horse bid, then the Property will be offered at the Auction to the highest bidder above the Stalking Horse bid plus a negotiated bidding incremental amount to compensate for the break-out fee and any additional costs.

**Bidder's Financial Qualifications-Commitments/Required Documents/Closing**

In order for a bidder to pre-qualify to register and participate in the Auction, we will require all bidders to provide the following escrow deposit(s) and related documents;

- Wire into Ms. Susan Lasky's Trust account a $200,000 Initial Escrow Deposit in U.S. cleared funds forty  eight hours prior to the Auction date.
- If a Stalking Horse bid is secured, sign the non-negotiable Court approved Purchase and Sale Agreement in the amount of the Stalking Horse bid plus the additional fees/costs.
- A signed financing commitment or such other evidence of financial ability to pay, free of any contingency, an amount of no less than three million dollars (a bid subject to a financing contingency is not a Qualified Bid).
- Closing will be coordinated through Ms. Lasky's law office and will take place within twenty calendar days from the dated and signed Court final sales order.

Within twenty four hours from the highest and best bidder being approved by the Court, an Additional Escrow Deposit totaling ten percent of the total contract price in cleared funds will be required to be wired to the Ms. Susan Lasky's trust account.

We highly recommend the immediate back up bidder be approved by the Court requiring them to leave in escrow their $200,000 Initial Escrow Deposit with interest to accrue to their benefit, sign the approved Purchase and Sale Agreement at their bid price and close the transaction if the successful purchaser defaults on their purchase.

**Property Guarantees/Title**

The Property is sold, in its "AS IS, WHERE IS" condition with all faults and defects, with no representations, guarantees or warranties express or implied. The Court will pass title free and clear of all liens and monetary encumbrances.





# Auction Marketing Plan
# "The David Cassidy Bankruptcy Estate"

**Property Information Package (Due Diligence)**
Fisher's years of experience in selling real property has taught us that the more knowledgeable a buyer is about the Property prior to bidding; the more they will pay for the Property.

We will prepare and provide to all prospective bidders a complete property information package (due diligence package) including but not limited to; executive summary, listing of the extensive amenities, surveys, floor/building plans, current appraisal (if any), aerial-ground and interior photographs, virtual tour, location maps, market overview, Court approved purchase and sale agreement with any exhibits, Court approved bidding procedures-general terms and conditions of sale, broker participation registration form, etc.



**Marketing Campaign Budget**
The marketing campaign is the key to the success for maximizing the sales price of the Property. The Bankruptcy Estate is only responsible for the fixed marketing expenses to promote the Property for the Auction, which are estimated to be $13,000. **All real estate commissions are paid by the successful purchaser, NOT the Bankruptcy Estate as delineated below.** Fisher has provided in this Plan the detailed line by line specifically designed marketing campaign budget (Exhibit "A"), encompassing all costs, for the Court's/Cassidy's approval. At the conclusion of the marketing campaign, we will provide a complete expense portfolio with copies of paid invoices, advertisements, etc. verifying each expense in the approved marketing budget. The approved marketing campaign funds are advanced to Fisher at the time of retention by the Court.

**Real Estate Commissions**
All real estate commissions are paid by the successful purchaser NOT the Bankruptcy Estate in the form of a six percent (6%) buyer's premium, which will be added to the final bid price and included in the total contract price.

*It is proven that the buyers get very involved in our accelerated process and the buyer's premium will result in an overall much higher than anticipated sales price. This is an internationally accepted method of auction sales and enhances the Bankruptcy Estate's net results.*

It is Fisher's policy to encourage and work with all real estate brokerage firms to register their clients to participate at the Auction. We will offer a procuring cause broker a portion of the buyer's premium as their earned real estate commissions.

Therefore, The 6% buyer's premium will be divided as follows:

■ Fisher to receive 4% of the final bid price as earned real estate commissions.
■ A procuring cause broker to receive 2% of the final bid price as earned real estate commissions. If there is no procuring cause broker involved in the sale of the Property, Fisher and the Bankruptcy Estate will split this 2%.



# Auction Marketing Plan
# "The David Cassidy Bankruptcy Estate"

**Project Coordinator/Project Managers**

Lamar P. Fisher, President/C.E.O. of Fisher Auction Company will be the project coordinator for this initiative. He will oversee the entire sales process keeping all parties informed through weekly progress/analytical market reports. Francis Santos and Jason A. Welt will be the project managers coordinating all the marketing efforts and will work directly with the Cassidy's and or their representative.

At the Court's confirmation hearing, Fisher will provide the Final Sales Report for filing purposes with the Court.

**Conclusion**

There is no other method of sale other than the outlined sales process above in which will provide an arm's length transaction with total transparency to the Court, fiduciary responsibility, global marketing campaign, pre-qualified purchasers participating under pre-determined terms, buyer responsible for all real estate commissions; NOT the Bankruptcy Estate, an "as-is no contingency" transaction with immediate hard escrow deposits and a twenty day closing, no re-trading of price or post due diligence, and maximizes competition and therefore maximizes pricing. Our process creates the ultimate urgency factor in which buyers are forced to react at a time certain event-there is no tomorrow!

**We firmly believe Fisher can obtain the highest net realizable value through this Auction Marketing Plan producing market value! We are prepared to provide an Affidavit of Disinterestedness, Insurance requirements to the U. S. Trustee's office, required licensures etc. for the Court appointment purposes.**

**We thank you for this opportunity to present our Plan for the Court and the Cassidy's consideration.**



# EXHIBIT
# "C"

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### (FORT LAUDERDALE DIVISION)
#### www.flsb.uscourts.gov

In re:                                            Case No. 15-12588-RBR

DAVID CASSIDY,                                    CHAPTER 11

     Debtor.

_____/

## NOTICE OF SALE

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

    1.    On February 11, 2015, David Cassidy (the "Debtor") filed a voluntary petition under Chapter 1 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court").

    2.    The Debtor filed a Motion For The Entry Of An Order (1) Authorizing Debtor to Schedule and Auction Sale Of Real Property Jointly Owned byThe Debtor and His non filing Spouse,; (2) Approving Bidding Procedures In Connection With Auction Sale; (3) Approving Form And Manner Of Sale; (4) Scheduling A Final Hearing To Approve Sale (the " Motion") and (5) approving the Sale Free and Clear of Liens Claims and Encumbrances.

    3.    The Debtor proposes to sell the real property located at 1600 S. Ocean Dr. #2003 Fort Lauderdale Fl 33316, (the "Property") via auction on the terms and conditions set forth herein.

    4.    The Bankruptcy Court has scheduled a hearing to approve the Sale (the "Sale Hearing") for     **at a.m./ p.m.**, at 299 E. Broward Blvd., Room 308, Ft. Lauderdale, Florida 33301.

    5.    Objections, if any, to the Sale, must (a) be in writing; (b) set forth the nature of the objector's claims against or interest in the Debtor's estate, and the basis for the objection and the specific grounds therefore; (c) comply with the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of Florida and all Orders of this Court; (d) be filed with the Bankruptcy Court and served upon counsel to the Trustee, the United States Trustee for the Southern District of Florida, so as to be RECEIVED **no later than 5:00 p.m. (Eastern) two (2) business days prior to the Sale Hearing** (the "Objection Deadline"). Only timely filed and served responses, objections, or other pleadings will be considered by the Bankruptcy Court at the Sale Hearing. The failure of any person or entity to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale to the Purchaser or the consummation and performance of the Real Estate Contract.

6.      Any person wishing to make a higher or better offer ("Qualified Offers") to purchase the Property must comply with the "Participation Requirements" described herein.

7.      If objections are not timely filed and/or if a higher or better Qualified Offers are not timely received by the Debtor, the Debtor shall proceed with confirmation of the Sale to the Successful Bidder as defined below at the Sale Hearing. Objections not timely filed and Qualified Offers not timely received shall be deemed waived. The failure to timely comply with the requirements set forth herein shall be deemed a consent to the sale transaction contemplating the sale of the Property to the Purchaser and the other relief requested in the Sale Motion, and be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Bidding Procedures, the Sale Motion, the Auction, and the sale of the Property.

8.      A summary of the procedures (the "Sale Procedures") for the Auction are as follows:

(a)      Participation Requirements: Unless otherwise ordered by the Court, in order to participate in the bidding process, an interested bidder must (I) wire into the trust account of Susan D. Lasky, PA, an escrow deposit of $200,000 no later than 5:00 p.m. two (2) business days prior to the scheduled auction (the "Bid Deadline") and (ii) submit to Susan D. Lasky PA a fully executed bid proposal, which shall include a purchase price, on or before the Bid Deadline  A person who timely complies with these requirements shall be a "Qualified Bidder". The "Successful Bidder" (defined below) shall be required to tender on the auction day an additional deposit in the form of a personal or business check drawn on a U.S. Bank bringing the total deposit to an amount equal to 10% of the total contract price including the Buyer's Premium

(b)      Participation in Auction:  The Auction shall take place at Property located at  1600 S Ocean Drive 32003, Fort Lauderdale, Florida 33316, beginning at 10:00 a.m. or such other time or place as the Debtor shall notify all Qualified Bidders.

(c)      Auction Procedures: All Qualified Bidders shall be entitled to make any bids, provided however, that after the initial bid is accepted all subsequent bids shall be in increments of $25,000 or as otherwise modified by the Debtor. Bidding at the Auction shall continue until such time as the highest and best offer is determined, which shall be determined by the Debtor in the exercise of his business judgment. The Debtor reserves the right to modify the bidding increments or announce at the Auction additional procedural rules for conducting the Auction in the exercise of his business judgment.

(d)      Successful Bid: After the conclusion of the Auction, the Debtor shall submit the highest or best bid (the "Successful Bid") for approval by the Bankruptcy Court at the Sale Hearing. The Qualified Bidder who has the Successful Bid presented for approval to the Court shall be referred to herein as the "Successful Bidder." .

(e)      Real Estate Sales Contract: The Successful Bidder shall be required to execute a "Non-Contingency All Cash" Real Estate Sales Contract at the conclusion of the Auction with no post due diligence period.

(f)    Deposit: The Successful Bidder shall be required to tender at the Auction an additional deposit in the form of a personal or business check drawn on a U.S. bank bringing the total deposit to an amount equal to 10% of the total contract price (the "Deposit").

(g)    Closing: Closing shall take place within thirty (30) days of entry of the Order approving the sale (the "Sale Order") or five (5) days after the Sale Order becomes final and non-appealable, whichever is later.

(h)    Back Up Bids: Upon the failure of the Successful Bidder to consummate the closing of the purchase of the Property because of a breach or failure on the part of the Successful Bidder, the Debtor may elect in his business judgment the next highest or otherwise best Qualified Bidder to be the Successful Bidder (the "Back Up Bidder").

(i)    As Is Where Is: The Property shall be sold "As Is", "Where Is" and with all faults, with no guarantees or warranties express or implied.

(j)    Liquidated Damages:  In the event the Successful Bidder does not close, the Successful Bidder will forfeit the entire Deposit.

(k)    Objections: Objections, if any, to the Sale, must (a) be in writing; (b) set forth the nature of the objector's claims against or interest in the Debtor's estate, and the basis for the objection and the specific grounds therefore; © comply with the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of Florida and all Orders of this Court; (d) be filed with the Court and served upon counsel to the Debtor, the United States Debtor for the Southern District of Florida, so as to be RECEIVED no later than 5:00 pm (Eastern) two (2) days prior to the Sale Hearing (the "Objection Deadline"). Only timely filed and served responses, objections, or other pleadings will be considered by this Court at the Sale Hearing. The failure of any person or entity to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, the Sale or the consummation and performance of the Agreement.

9.    As stated herein in ¶ 4, the Sale Hearing (whether to the Purchaser or the Successful Bidder) is currently scheduled for  at  a.m./p.m (Eastern Time) at the United States Bankruptcy Court for the Southern District of Florida, 299 E. Broward Blvd., Room 308, Ft. Lauderdale, FL before the Honorable Raymond B. Ray, United States Bankruptcy Judge, to consider the approval of the sale. The Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing.

10.    This Notice is subject to the full terms and conditions of the Second Sale Motion which shall control in the event of any conflict. The Debtor encourages parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice in connection therewith.

11.    For further information about the sale, please contact the Auctioneers.

Respectfully submitted,